UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>GARY E. LARIMER; SEAN E. LARIMER; SHARLENE R. POFF, individually and as Special Administrator of ESTATE OF KYLE RICHARD POFF; RICHARD POFF; ESTATE OF TRAVIS DUNNING; SUSAN DUNNING; JAMES DUNNING; ESTATE OF JOSH PARRY; TINA PARRY; STEVE PARRY; CODY FREDERICKS; and DOES I through XX, inclusive,<br><br>Defendants. | CV-S-04-0289-PMP (PAL)<br><br>O R D E R |

Presently before this Court is Plaintiff Allstate Insurance Company's Motion for Summary Judgment (Doc. #32), filed on April 19, 2005. Defendant Cody Fredericks filed a Countermotion for Summary Judgment (Doc. #33) on May 9, 2005. Defendants James Dunning, Susan Dunning, and Estate of Travis Dunning filed a Joinder of Defendant Cody Fredericks' Countermotion for Summary Judgment (Doc. #34) on May 11, 2005. Defendants Sharlene R. Poff, individually and as Special Administrator of Estate of Kyle Richard Poff; Richard Poff; Estate of Josh Parry, Tina Parry; and Steve Parry filed an Opposition to Motion for Summary Judgment and Counter-motion for Summary Judgment (Doc. ##35, 36), on May 19, 2005. On November 7, 2005, this Court conducted a hearing regarding the above motions.

## I.  BACKGROUND

This case arises out of a tragic car accident that occurred on November 10, 2003. (Mot. Summ. J., Ex. A at 27.) Defendant Sean Larimer ("Sean"), then sixteen years old, was driving a Pontiac Grand Am while under the influence of alcohol. (Id.) Larimer drove the car into a wall. (Id.) Three of his passengers, Defendants Kyle Poff, Travis Dunning, and Josh Parry were killed. (Id.) Sean and his other passenger, Defendant Cody Fredericks, were injured. (Id.) Sean currently is serving a sentence in a juvenile detention center following his criminal conviction. (Mot. Summ. J., Ex. C at 8.) No dispute exists regarding liability. At issue in this case is whether coverage exists for the accident under the insurance policy owned by Sean's father, Gary Larimer ("Gary"), issued by Plaintiff Allstate Insurance Company ("Allstate").

Gary's policy covers "damages an insured person is legally obligated to pay" because of bodily injury. (Ex. F, Policy at 3.) An insured person includes "any resident relative using a four wheel private passenger auto or utility auto." (Id. at 4.) A covered "auto" includes "a non-owned auto used by you or a resident relative with the owner's permission. This auto must not be available or furnished for the regular use of an insured person." (Id.) Allstate concedes, for purposes of this motion, that Sean was a resident relative of Gary, and thus was an "insured person" under Gary's policy. (Mot. Summ. J. at 10 n.2.) Thus, the only issue before the Court is whether the Grand Am was furnished for Sean's "regular use."

Prior to the accident, Sean's parents, Gary and Susan Larimer were married and living in the same household. (Mot. Summ. J., Ex. A at 17-20, Ex. B at 9.) At that time, the Larimers owned an insurance policy issued by Allstate that covered Gary's BMW, Susan Larimer's Buick Rendezvous, and the Pontiac Grand Am. (Mot. Summ. J., Ex. A at 23; Ex. E.) On October 3, 2003, Gary and Susan Larimer divorced. (Mot. Summ. J., Ex. A at 19.) The day before the divorce, Susan Larimer ("Susan") had the insurance policy split into two

1  new policies, with Gary's policy covering his BMW, and Susan's policy covering the
2  Rendezvous and the Grand Am.  (Mot. Summ. J., Ex. A at 23; Ex. B at 42-44, 57-58; Ex. F;
3  Ex. G; Ex. H.)
4           On the date of the accident, Susan was the only registered owner of the Grand
5  Am.  (Mot. Summ. J., Ex. B at 16.)  Susan gave the Grand Am to Sean to drive as a
6  sixteenth birthday present in August 2003.  (Mot. Summ. J., Ex. A at 26-27, Ex. B at 17;
7  Ex. C at 20.)  Susan drove the vehicle only to get it smog-checked and registered.  (Mot.
8  Summ. J., Ex. B at 28-29; Ex. C at 25-26.)  After Sean got his license in September 2003,
9  neither Susan nor Gary drove the Grand Am, and the car essentially was for Sean's use.
10 (Mot. Summ. J., Ex. A at 42, Ex. B at 28, 31; Ex. C at 25-26.)  The Allstate policy showed
11 Sean as the one hundred percent user of the Grand Am, and Susan indicated that was
12 accurate.  (Mot. Summ. J., Ex. B at 47-48.)  Sean and Susan both had keys for the car.
13 (Mot. Summ. J., Ex. B at 37; Ex. C at 37-38.)  Sean drove the vehicle to and from school
14 and sports practice daily.  (Mot. Summ. J., Ex. B at 29; Ex. C at 26-27.)  He also drove to
15 friends' houses, to run errands, to attend sporting events, to the mall, and for other
16 recreational activities.  (Mot. Summ. J., Ex. B at 31-33; Ex. C at 26-27, 30-32.)
17          Susan told Sean driving was a privilege she would revoke if he disobeyed her
18 rules.  (Mot. Summ. J., Ex. B at 49; Ex. C at 43, 45, 49-50.)  Susan and Sean were under a
19 mutual understanding that he would take the car in the morning to school, but Sean had to
20 check in with Susan each time he wanted to use the car to go anywhere else on weeknights,
21 or on the weekend.  (Mot. Summ. J., Ex. B at 49, 54-55; Ex. C at 33-34, 49.)  Sean could
22 not drink and drive, could not drive with persons under the age of eighteen in the car other
23 than his younger brother, could not use his cellular phone while driving, and had to follow
24 traffic rules and wear his seatbelt.  (Mot. Summ. J., Ex. B at 34, 49, 50.)  Sean had a
25 midnight curfew on weekends, and a 9:00 or 10:00 p.m. curfew on weeknights.  (Mot.
26 Summ. J., Ex. B at 32; Ex. C at 32.)  Susan also geographically restricted Sean's permission

1   to use the car.  (Mot. Summ. J., Ex. B at 38.)  Sean was not permitted to drive to California,
2   and he was not permitted to drive on the freeway.  (Mot. Summ. J., Ex. B at 33-34, 38; Ex.
3   C at 41.)  At his deposition, Sean described his use of the car as follows:

> [I]f my mom didn't feel, you know, that where I was going was appropriate or something like that, you know, she wouldn't allow me. You know, like I said earlier, you know, pretty much it was my vehicle to use but I still had to get permission and things like that.  I couldn't just leave and use the vehicle whenever I wanted.  I still had to get permission from my mom, you know, to drive places and things like that.

(Mot. Summ. J., Ex. C at 44.)

Allstate moves for summary judgment seeking declaratory judgment that Gary's policy did not cover Sean for the accident because the Grand Am was provided to Sean for his regular use.  Allstate also seeks a declaration that it owes no duty to defend under Gary's policy.  Defendants oppose the motion for summary judgment and counter-move for summary judgment, arguing that under Nevada law, the restrictions Susan placed on Sean's use of the car establishes the Grand Am was not furnished for Sean's regular use.

**II.     LEGAL STANDARD**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" demonstrate "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The substantive law defines which facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All justifiable inferences must be viewed in the light most favorable to the non-moving party. County of Tuolumne v. Sonora Cmty. Hosp., 236 F.3d 1148, 1154 (9th Cir. 2001).

The party moving for summary judgment bears the initial burden of showing the absence of a genuine issue of material fact.  Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 531 (9th Cir. 2000).  The burden then shifts to the non-moving party to go beyond the pleadings and set forth specific facts demonstrating there is a genuine issue for trial.

4

1 Id.; Far Out Prods., Inc. v. Oskar, 247 F.3d 986, 997 (9th Cir. 2001).

2 **III.     DISCUSSION**

3     **A.  Coverage Under Gary's Policy**

4     Allstate contends Sean was not covered under Gary's policy because the Grand Am was furnished for Sean's regular use. Defendants respond that under Nevada law, restrictions placed on the use of a vehicle show the vehicle was not furnished for regular use. Defendants therefore argue that because Susan placed rules upon Sean's use of the Grand Am, the vehicle was not provided for Sean's regular use.

     In Nevada, "regular use" means constant, systematic, steady, and methodical, denoting "continuous use; uninterrupted normal use for all purposes; without limitation as to use; and customary use as opposed to occasional use or special use . . . ." Hartford Ins. Group v. Winkler, 508 P.2d 8, 13 (Nev. 1973) (quotation omitted). Evidence that a driver had to obtain specific authorization to use the vehicle or that the driver did not have access to the vehicle or the keys may support a finding that it was not furnished for his regular use. Id. at 12-13. Irregular, infrequent, or casual use does not come within the exclusionary clause and therefore would be covered by the policy. Id. at 13.

     The Court finds genuine issues of material fact preclude summary judgment on behalf of Allstate. Viewing the facts in the light most favorable to Defendants, the nonmoving parties, a reasonable jury could find the Grand Am was not furnished for Sean's regular use because Susan placed restrictions upon his use, and he had to get permission to use the vehicle. Both Susan and Sean testified that although he had implied permission to use the vehicle to get to school, he had to request permission to go anywhere else. Additionally, Susan placed other restrictions upon his use, including who he could have in the vehicle, what rules he had to obey, and where he could travel. Both Sean and Susan testified that Sean's access to the car was a revokable privilege. Although Sean had implied permission to use the car to drive to school, the accident occurred during a trip for which

5

1  Sean had to obtain specific permission from his mother to use the car. The Court therefore
2  will deny Allstate's motion for summary judgment on this issue.
3        In finding genuine issues of fact remain regarding regular use, the Court does not
4  discount the policy arguments Allstate puts forth regarding the "regular use" restriction's
5  purpose. This provision is "a convenience to the insured to enable coverage in the case of
6  occasional and sporadic use" of other vehicles, but restricts the coverage to vehicles not
7  furnished for regular use "to make certain that the insured properly pays premiums on all of
8  the vehicles which are regularly used and therefore are covered by the policy." Benjamin v.
9  Plains Ins. Co., 650 F.2d 98, 100 (5th Cir. 1981). "More specifically the evident intention
10 of the limitation with respect to other automobiles is to prevent a situation in which the
11 members of one household may have two or more automobiles actually or potentially used
12 interchangeably but with only one particular automobile insured." Volpe v. Prudential
13 Prop. and Cas. Ins. Co., 802 F.2d 1, 3 (1st Cir. 1986).
14       Allstate as the insurer could have drafted its policy to include specific language
15 indicating parental permission to use the car does not place a sufficient limitation on a
16 vehicle's use to fall outside the "regular use" restriction. Absent such policy language to
17 the contrary, Winkler holds that having to obtain permission to use the vehicle may be
18 sufficient to support a jury finding of non-regular use. The Court therefore cannot hold, as
19 a matter of law, the Grand Am was furnished to Sean for his "regular use." However,
20 Allstate is not precluded from arguing the policy implications to the jury, and explaining
21 that Gary Larimer should have expected to pay a premium to cover Sean and the Grand Am
22 given Sean's daily use of the car.
23       The Court finds genuine issues of material fact also preclude summary judgment
24 on behalf of Defendants. Viewing the facts in the light most favorable to Allstate, the
25 nonmoving party, a reasonable jury could find the Grand Am was furnished for Sean's
26 regular use. Sean had keys to the vehicle and had unfettered access to it. Although Susan

placed rules upon him, she never revoked her permission for him to use the car. The vehicle was given to him for his use alone, and no one else drove it once Sean had his license.[1] Sean used it on a daily basis for everything from school and football practice to running errands to recreational activities.

With respect to the restrictions Susan placed on Sean, in Winkler, the Nevada Supreme Court stated that "[t]he single fact that [a driver] did not have a key to the automobile and was required to obtain permission to use the automobile is in itself sufficient to support a finding that the automobile was not available for her regular use." Id. at 12. However, Winkler was an appeal from a jury verdict, and thus was commenting only on what kind of evidence would be sufficient to support a jury verdict. Id. at 10, 12-13. The Nevada Supreme Court has not ruled that such evidence demonstrates as a matter of law that a vehicle was not furnished for regular use. The Court therefore will deny Defendants' motion for summary judgment on this issue.

**B. Duty to Defend**

"The duty to defend is broader than the duty to indemnify." United Nat'l Ins. Co. v. Frontier Ins. Co., Inc., 99 P.3d 1153, 1158 (Nev. 2004). An insurer owes a duty to defend its insured "whenever it ascertains facts which give rise to the potential of liability under the policy." Id. (quotation omitted). Potential liability under the policy exists when coverage is "arguable or possible." Id. To determine whether an insurer owes a duty to defend, the court must compare the complaint's allegations with the insurance policy's terms. Id. Doubts regarding whether the duty to defend arises must be resolved in the insured's favor. Id.

///

---

[1] Sean and Susan testified that some of Sean's friends drove the car on isolated occasions, but they did so without Sean, Susan, or Gary's permission. (Mot. Summ. J., Ex. B at 35-36; Ex. C at 37.)

7

Given the Court's ruling that genuine issues of fact exist as to whether Gary's policy covers the accident at issue, coverage under Gary's policy is arguable or possible. Resolving doubts in the insured's favor, Allstate has a duty to defend under Gary's policy. The Court therefore will grant Defendants' motion for summary judgment on this issue, and declare that Allstate has a duty to defend under Gary's policy for the November 10, 2003, accident.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff Allstate Insurance Company's Motion for Summary Judgment (Doc. #32) is hereby DENIED.

IT IS FURTHER ORDERED that Defendant Cody Fredericks' Countermotion for Summary Judgment (Doc. #33); Defendants James Dunning, Susan Dunning, and Estate of Travis Dunning's Joinder of Defendant Cody Fredericks' Countermotion for Summary Judgment (Doc. #34); and Defendants Sharlene R. Poff, individually and as Special Administrator of Estate of Kyle Richard Poff; Richard Poff; Estate of Josh Parry, Tina Parry; and Steve Parry's Opposition to Motion for Summary Judgment and Counter-motion for Summary Judgment (Doc. ##35, 36) are hereby GRANTED in part and DENIED in part. The motions are granted with respect to the issue of Allstate's duty to defend. The motions are denied with respect to coverage under Gary Larimer's policy.

IT IS DECLARED that Plaintiff Allstate Insurance Company owes a duty to defend under Gary Larimer's insurance policy with respect to the November 10, 2003, accident involving Sean Larimer.

DATED:   December 1, 2005

_____
PHILIP M. PRO
Chief United States District Judge

8